[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION ON MOTION FOR SUMMARY JUDGMENT OF DEFENDANT DONALD DIBIANCO
In this case, plaintiff Steven Dillman, a paramedic-firefighter employed by the First Fire Taxation District of the City of West Haven ("Fire District"), has sued several defendants, including fellow Fire District employee Donald DiBianco, an EMT-firefighter, for injuries and losses he claims to have suffered due to the October 5, 1999 collision, in downtown New Haven, between a Fire District ambulance being operated by defendant DiBianco and an Elm City Livery van being operated by co-defendant Pamela Allen-Warren. In his Revised Complaint dated January 18, 2002 ("Complaint"), the plaintiff alleges that the collision occurred at approximately 9:00 a.m. on the day in question when defendant DiBianco, while acting in the performance of his duties as a Fire District employee, drove the ambulance through the intersection of Church Street South and South Frontage Road in New Haven without yielding to Ms. Allen-Warren's van. According to the plaintiff, the force of the ensuing collision caused the ambulance to skid, rotate clockwise, slide into a curb, flip over, and then collide with a steel pole, thereby causing him several serious physical injuries.[1]
In Count XIV of the Complaint, the plaintiff claims that defendant DiBianco must pay him damages for his injuries and losses because he proximately caused the collision that produced them by engaging in wilful CT Page 9427 and malicious conduct. On that score he alleges, more particularly, that:
8. Said collision was due to the wilfull (sic) and malicious conduct of the defendant, Donald DiBianco in one or more of the following ways:
 a. in that he failed to slow down or to stop at the approach of a red light in the intersection to the extent necessary for the safe operation of the emergency vehicle in violation of Section 14-283 (b) (2) of the Connecticut General Statutes;
 b. in that he failed to bring his vehicle to a halt for a red light controlling traffic entering the intersection in violation of section 14-299 of the Connecticut General Statutes;
 c. in that he operated his vehicle at an unreasonable rate of speed in violation of speed having due regard for the width, traffic and use of said highway and weather conditions, in violation of subsection 14-218 (a) of the Connecticut General Statutes;
 d. in that he drove his vehicle recklessly and in such a way and under such conditions as to pose an unreasonable risk of injury to other persons in violation of Section;
 e. in that he operated his vehicle recklessly, in violation of subsection 14-218 (a) of the Connecticut General Statutes; and
 f. in that he exceeded the speed limits in such a manner that life and property were endangered, in violation of Subsection 14-283 (b)(3)
Complaint, Count XIV, ¶ 8.
In Count XV, in turn, the plaintiff claims that defendant DiBianco is also liable for his injuries and losses under General Statutes §14-295.[2] In this regard, he makes then following specific allegations about the cause of the collision which produced those injuries and losses:
8. Said collision was due to the carelessness and negligence of the CT Page 9428 defendant, Donald DiBianco in one or more of the following ways:
 a. in that he failed to slow down or to stop at the approach of a red light in the intersection to the extent necessary for the safe operation of the emergency vehicle in violation of Section 14-283 (b) (2) of the Connecticut General Statutes;
 b. in that he failed to keep his vehicle under reasonable and proper control;
 c. in that he failed to bring his vehicle to a halt for a red light controlling traffic entering the intersection in violation of § 14-299
of the Connecticut General Statutes;
 d. in that he operated his vehicle at an unreasonable rate of speed in violation of speed having due regard for the width, traffic and use of said highway and weather conditions, in violation of subsection 14-218 (a) of the Connecticut General Statutes;
 e. in that he failed to keep his vehicle under reasonable and proper control;
 f. in that he failed to turn his vehicle in time in order to avoid a collision;
 g. in that he failed to sound his horn or give the operator of the livery vehicle a timely warning of his impending collision;
 h. in that he was inattentive and failed to keep a reasonable and proper lookout for other vehicles upon said highway at said time and place;
 i. in that he failed to take reasonable precautions to avoid the accident;
 j. in that he drove his vehicle in such a way and under such conditions as to pose an unreasonable risk of injury to other persons;
 k. in that he failed to act as a reasonable and prudent person in the operation of said vehicle at CT Page 9429 said time and place in view of the circumstances and conditions then and there prevailing; and
 l. in that he exceeded the speed limits in such a manner that life and property were endangered, in violation of Subsection 14-283 (b)(3)
* * *
 14. The defendant is liable to the plaintiff under Section 14-295 of the Connecticut General Statutes because the defendant, Donald DiBianco, deliberately or with reckless disregard, operated said motor vehicle in violation of Sections 14-218 (a) and 14-222
of the Connecticut General Statutes and said violation was a substantial factor in causing the plaintiff's injuries and damages.
Complaint, Count XV, ¶¶ 8, 14.
Defendant DiBianco has responded to the foregoing allegations by admitting that, at the time of the collision in question, both he and the plaintiff were working inside the Fire District ambulance, performing their duties as Fire District employees. He denies, however, that when he drove the ambulance through the intersection of Church Street South and South Frontage Road on the morning of October 5, 1999, he failed to yield to Ms. Allen-Warren's van, or that his conduct at the time was either wilful and malicious or violative of General Statutes § 14-295. He has also pleaded as a special defense that each of the plaintiff's challenged counts "fails to state a claim upon which relief may be granted." Answer and Special Defenses to Revised Complaint dated January 18, 2002, pp. 4-6.
On February 7, 2002, defendant DiBianco moved this Court for summary judgment on each count of the Complaint that pertains to him. Among the grounds asserted in support of that motion is that each of the plaintiff's claims is legally insufficient, both as pleaded and as supported by the evidence here of record, to overcome the bar of General Statutes § 7-308 to most actions by firemen to recover damages from fellow employees for work-related injuries resulting from the employees' tortious performance of their employment duties.
Under Section 7-308, the defendant rightly notes, a municipal fireman who has a right to worker's compensation benefits "by reason of injury . . . caused by the negligence or wrong of a fellow employee while both employees are engaged in the performance of their employment for such CT Page 9430 municipality, shall have no cause of action against such fellow employee to recover damages for such injury . . . unless such wrong was wilful and malicious." In this State, the defendant continues, "wilful and malicious" conduct has long been defined as conduct intentionally engaged in with the intent to cause injury. Here, then, he argues, he is entitled to summary judgment on both challenged counts because neither alleges or is supported by any evidence that he was acting with the intent to cause injury when he engaged in the conduct that allegedly produced the plaintiff's injuries.
The defendant has supported his motion with two memoranda of law and four sworn affidavits — one from himself and one each from the following Fire District officers and officials: Fire Commissioner Stephen Dargon; Fire Chief William Johnson; and lieutenant firefighter Timothy Ferrucci.
The plaintiff does not disagree with the defendant that to avoid the bar of General Statutes § 7-308, he must plead and prove that the defendant proximately caused his injuries by "wilful and malicious" conduct. He contends, however, that in light of two modern Supreme Court decision — Dubay v. Irish, 207 Conn. 518 (1988) and Elliot v.Waterbury, 245 Conn. 385 (1998) — the term "wilful and malicious" conduct has been merged with and redefined to include common-law reckless or wanton conduct, which "is the equivalent of wilful misconduct." Dubayv. Irish, supra, 207 Conn. at 533 n. 8 (quoting State v. Alterio,154 Conn. 23, 25-26 (1966) and citing Menzie v. Kalmonowicz, 107 Conn. 197,199 (1928)). Because common-law recklessness or wantonness does not require proof of intent to cause injury; id. the plaintiff insists that summary judgment must not be entered in this case for failure to plead or present competent evidence that the defendant caused his injuries while acting with such an intent.
As a fallback position, the plaintiff argues that if, notwithstandingDubay and Elliott, he cannot prevail on his claim of wilful and malicious conduct without pleading and proving that the defendant caused his injuries while acting with the intent to cause injury, he must be permitted to replead his challenged counts to so allege, and then to depose defendant DiBianco to develop evidence from which intent might be inferred even if DiBianco denies it. An inference of intent, the plaintiff argues, can properly be based upon facts and circumstances known to the defendant when he acted that made it "substantially certain" that injury would result from his actions.
The plaintiff has supported his position on the defendant's motion with a memorandum of law and sworn affidavits from two eyewitnesses to the collision: defendant Pamela Allen-Warren, who drove the Elm City Livery CT Page 9431 van; and Mark Chernyak, another driver whose vehicle was close to the Church Street South-South Frontage Road intersection when the collision occurred. The parties presented oral argument on the motion on June 11 and July 16, 2002.
 I
"Summary judgment is a method of resolving litigation when the pleadings, affidavits, and any other proof submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Wilson v. New Haven,213 Conn. 277, 279 (1989) (Citations omitted). The burden of proof on a motion for summary judgment is on the moving party; Fogarty v. Rashaw,193 Conn. 442, 445 (1984); who must clearly show that there is no genuine dispute either as to the existence of one or more facts which, if established, would entitle him to judgment as a matter of law, or as to the nonexistence of one or more facts upon which his opponent's right to judgment materially depends.
In deciding a motion for summary judgment, the trial court must employ the same standard it would use in deciding a motion for a directed verdict. Suarez v. Dickmont Plastics Corp., 229 Conn. 99, 105 (1994). In Connecticut, the direction of a verdict is only "justified if upon the evidence the jury could not reasonably and legally have reached any other conclusion than that embodied in the verdict as rendered." Bernardo v.Hoffman, 109 Conn. 158, 159 (1929).
In the typical case, where the moving party challenges the sufficiency of the non-movant's evidence to support his claim or cause of action, the question presented for decision is whether that evidence, when viewed in the light most favorable to the non-movant, is reasonably capable, if credited, of sustaining a verdict in his favor. United Oil Co. v. UrbanRedevelopment Commission, 158 Conn. 364, 380 (1969). In one sense, this case is typical, for here defendant DiBianco has challenged the sufficiency of the plaintiff's evidence to prove all of the plaintiff's claims against him. In another sense, however, this case is not typical, for here the moving party also challenges the legal sufficiency of theallegations of those counts to state valid claims upon which relief can be granted. The threshold question thus arises whether this aspect of the defendant's motion, which is traditionally presented in a motion to strike, is an appropriate basis upon which to seek or grant summary judgment.
In Burke v. Avitabile, 32 Conn. App. 765, 772 (1993), the Appellate Court flatly stated that it was not, observing that "[t]he office of a motion for summary judgment is not to test the legal sufficiency of the CT Page 9432 complaint, but is to test for the presence of contested factual issues. Practice Book § 384 [now § 17-49]." However, in the earlier case of Boucher Agency, Inc. v. Zimmer, 160 Conn. 404, 409 (1971), cited by the Burke Court but described as "anomalous," id. at 772 n. 9, the Supreme Court disagreed, clearly stating that in the case before it, "[t]he proper way to have tested the legal sufficiency of the complaint . . . would have been, . . . after an answer had been filed, by a motion for summary judgment." Boucher Acrency, Inc. v. Zimmer, supra,160 Conn. at 409. Since lower court judges are bound by Supreme Court precedents, prudence suggests that they follow such precedents, however "anomalous" they may seem. Accordingly, this Court will follow Boucher rather thanBurke, and will treat the defendant's challenge to the legal sufficiency of the plaintiffs' complaint as a proper basis upon which to consider granting summary judgment.
More, however, than simple prudence supports the Court's conclusion that the defendant's motion may properly be considered on the grounds alleged. In fact, the appropriateness of granting summary judgment on the ground of failure to plead a valid claim or cause of action finds support both in our law governing the direction of verdicts and in the logic of our summary judgment rules, as traditionally described and formulated.
Over seventy years ago, in Sedita v. Steinberg, 105 Conn. 1, 5 (1926), our Supreme Court explained that a civil verdict may properly be directed for reasons other than insufficiency of the evidence. It observed, in particular, that:
 A verdict may be directed where the evidence is undisputed, where the only question is one of law, where the plaintiff's evidence is such that if a verdict was rendered in his favor it would properly be set aside, where reasonable men cannot differ as to the verdict which ought to be rendered, or where more than one conclusion is not reasonably open to the jury upon the evidence.
Id. (Emphasis added.)
Over the years, the rule that a verdict can be directed where the decisive issue is one of law, not one of fact, has never been abandoned.See, e.g., Rich v. Dixon, 153 Conn. 52, 61-62 (1965) (noting that "[a] verdict may be directed where the decisive question is one of law");Gottesman v. Aetna Ins. Co., 177 Conn. 631, 634 (1979) (same); Red MapleProperties v. Zoning Commission, 222 Conn. 730, 735 (1992) (same). To the contrary, it has frequently been cited as a proper legal basis for directing a verdict when a challenged count or pleading fails to state a CT Page 9433 valid claim or cause of action. See, e.g., Stavnezer v. Sage-Allen Co., 146 Conn. 460, 462 (1959) (holding that the trial court erred by failing to grant the defendant's motion, made at the close of all the evidence, to direct a verdict "on the ground . . . that the only cause of action set forth in the complaint was [a] . . . defective one sounding in slander"); Magnan v. Anaconda Industries, Inc., 193 Conn. 558, 573 (1984) (holding, inter alia, that where the facts alleged in the first count of the plaintiff's complaint were inadequate to establish a legally cognizable breach of the implied covenant of good faith and fair dealing, a verdict should have been directed on that count); Red MapleProperties v. Zoning Commission, supra, 222 Conn. at 735 (upholding the trial court's direction of a verdict on the ground that the plaintiff's claim did not constitute a substantive due process violation as a matter of law). Logically, if our standard for granting summary judgment is identical to that for directing a civil verdict, and a civil verdict can lawfully be directed because the pleader has failed to state a valid cause of action, summary judgment can be lawfully granted where the challenged count or pleading is legally deficient.
The wording of our traditional standard for granting summary judgment is entirely consistent with the foregoing conclusion. Under that standard, to restate it, summary judgment can be granted when the moving party proves that there is "no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Wilsonv. New Haven, supra, 213 Conn. at 279.
Whether or not there is a "genuine issue" as to any "material fact" is a two-part inquiry. The first question to be answered is whether or not the fact as to which the moving party claims there is no genuine issue is indeed a "material fact" — that is, "a fact which will make a difference in the result of the case[.]" Yanow v. Teal Industries, Inc.,178 Conn. 262, 268 (1979). Such a fact, to reiterate, is one whose demonstrated existence or nonexistence would conclusively establish the moving party's right to judgment as a matter of law.
Once it is established that a particular fact is "material" to the outcome of the case, it must be determined whether or not there is any "genuine issue" as to that fact. This, in turn, depends both on the contents of the challenged pleading and on the nature and quality of the parties' competing proof. The role of the pleading in answering this question is itself twofold. First, the pleading sets forth the ultimate facts upon which the plaintiff bases its claims and causes of action. Second, the pleading states, with greater or lesser specificity, the particular historical facts upon which proof of those ultimate facts will be attempted. It is a matter of axiom that a party can prove no more at trial than he has duly pleaded in his operative pleadings. Therefore, if CT Page 9434 a party omits from his complaint an essential element of his claim or cause of action, he can be barred by timely objection from introducing any proof of that element at trial. There can be "no genuine issue" as to any unpleaded fact because that fact has not been placed in issue at all.
Similarly, there can be no genuine issue as to any material fact which, though duly pleaded, is claimed to exist based solely upon predicate facts which do not establish it as a matter of law. When a party pleads his case under a single theory of liability, he restricts himself to proving the case under that theory to the exclusion of all others. When a party so restricts himself in his pleading, and the facts alleged in the pleading are legally insufficient to support his claim, the claim may appropriately be disposed of by summary judgment. In that event, it is irrelevant whether or not the pleader has evidence that would support a properly pleaded claim. Since no such claim has been pleaded, it is simply not at issue in the case.
Against this background, this Court concludes that it may properly grant a motion for summary judgment based on the proven insufficiency of a plaintiff's challenged count or pleading to state a claim upon which relief can be granted.
 II
At all times relevant to this case, General Statutes § 7-308
has provided in pertinent part as follows:
 (b) Each municipality of this state, notwithstanding any inconsistent provisions of law, general, special or local, . . . shall pay on behalf of any paid or volunteer fireman . . . of such municipality all sums which such fireman . . . becomes obligated to pay by reason of liability imposed upon such fireman . . . by law for damages to person or property, if the fireman . . . at the time of the occurrence, accident, injury or damages complained of, was performing fire . . . duties, and if such occurrence, accident, injury or damages was not the result of any wilful or wanton act of such fireman in the discharge of such duties. This section shall not apply to damages to person caused by an employee to a fellow employee while both employees are engaged in the scope of their employment for such municipality if the employee suffering such damages or, in the case of his death, his dependent has a right to benefits or compensation under chapter 568 by CT Page 9435 reason of such damages. If a fireman or, in the case of his death, his dependent has a right to benefits or compensation under chapter 568 by reason of injury or death caused by the negligence or wrong of a fellow employee while both employees are engaged in the scope of their employment for such municipality, such fireman or, in the case of his death, his dependent shall have no cause of action against such fellow employee to recover damages for such injury or death unless such wrong was wilful and malicious.
General Statutes § 7-308 (Emphasis added). Under this statute, the defendant is correct in his assertion that no fireman who is entitled to receive workers' compensation benefits under Chapter 568 of the General Statutes may recover damages from a fellow municipal employee who injures him while they both are performing their municipal employment duties unless the other employee's wrongful conduct was "wilful and malicious." The plaintiff does not dispute the foregoing analysis, and for good reason, as the plain language of the statute unambiguously requires it. Instead, he disagrees with the defendant as to the meaning of the term "wilful and malicious," as it is used in Section 7-308.
The defendant takes the position that the term "wilful and malicious" must be given the same meaning in this statute as it had acquired at common law before the statute first became law in 1955. Such a construction, he argues, would be consistent with the general rule of General Statutes § 1-1, which provides that:
 In the construction of the statutes, words and phrases shall be construed according to the commonly approved usage of the language; and technical words and phrases. and such as have acquired a peculiar and appropriate meaning in the law, shall be construed and understood accordingly.
(Emphasis added.) Since the Court's sole task in construing a statute is to enforce the intent of the legislature which passed it, and the legislature can fairly be presumed to know the "peculiar and appropriate meaning in the law" of each "technical word or phrase" it uses to draft a statute, words with such meanings must be so interpreted unless the legislature gives clear evidence that a different meaning is intended.
When the original version of Section 7-308 first became law, the term "wilful and malicious" had acquired a peculiar and appropriate meaning in the law. "A wilful or malicious injury [,]" observed our Supreme Court inSharkey v. Skilton, 83 Conn. 503, 507 (1910), CT Page 9436
 is one caused by design. Wilfulness and malice alike import intent. Pitkin v. New York N.E.R.R. Co., 64 Conn. 482, 490, 30 A. 772 [(1894)]; Tuttle v. Bishop, 30 Conn. 80, 85 [(1861)]
To establish such an injury, the Sharkey Court observed, it is not enough for the plaintiff to show
 that the defendant took a course of action voluntarily and intentionally which led to harmful results. That falls far short of alleging that the harm which actually resulted was in contemplation of the wrongdoer.
Id. at 507. Indeed, said the Court, the "characteristic element" of wilful or malicious injury
 is the design to injure, either actually entertained or to be implied from the conduct and circumstances. Pitkin v. New York N.E.R.R. Co., 64 Conn. 482, 490, 30 A. 772 [(1894)]
Sharkey v. Skilton, supra, 83 Conn. at 507-08.
So defined, "wilful and malicious" conduct was distinct and different from common-law "reckless or wanton" conduct, which required no necessary design or intent to injure. Instead, as the Supreme Court defined the latter term in Menzie v. Kalmonowicz, supra, 107 Conn. at 199,
 Wanton misconduct is more than negligence, more than gross negligence. It is such conduct as indicates a reckless disregard of the just rights or safety of others or of the consequences of action.
Notwithstanding this definitional distinction, "wilful and malicious" conduct, on the one hand, and "reckless or wanton" conduct, on the other, both came to be recognized as bases for very similar common-law damages actions, to which contributory negligence was no defense and for which punitive damages could be awarded. In that sense, then, they were often said to be "equivalent" of one another, and in fact were often pleaded in the alternative as a single cause of action. Expressly recognizing this state of affairs, our Supreme Court observed as follows in Bordonaro v. Senk, 109 Conn. 428, 431-32 (1929):
 Wanton misconduct is more than negligence. . Wilful CT Page 9437 misconduct is intentional misconduct, and wanton misconduct is reckless misconduct, which is the equivalent of wilful misconduct. When we say that wanton misconduct is the equivalent of wilful misconduct, we do not intend to characterize these terms as equivalents of each other, but equivalents in result. Wilful or intentional misconduct and wanton misconduct are different concepts of wrongful or improper misconduct, but in their resultant they are alike in their seriousness and gravity, and the law subjects who ever is guilty of either form of misconduct to like rules and visits upon each a like liability.
By these words, the Supreme Court made it clear that in spite of their functional equivalency as legal bases for a common-law damages action, the terms "wilful misconduct" and "wanton misconduct" had distinct and different legal meanings.
Several years after deciding Bordonaro, yet still almost twenty years before Section 7-308 first became law, the Supreme Court expressly confirmed its understanding that the terms "wilful misconduct" and "wanton misconduct" describe conceptually distinct and different forms of wrongdoing. In Rogers v. Doody, 119 Conn. 532 (1935), the Court was asked to decide if the plaintiff, against whom a judgment had previously been rendered on a claim of wanton or reckless misconduct in a prior action, was entitled to the discharge of his liability for the earlier judgment under the Bankruptcy Act. The Bankruptcy Act provided, in relevant part, that "a discharge in bankruptcy shall release a bankrupt from all of his provable debts, except such as . . . (2) are liabilities for . . . wilful and malicious injuries to the person or property of another." The issue presented for the Court's decision was whether an injury resulting from reckless misconduct should be regarded as a "wilful and malicious injury," within the meaning of the Bankruptcy Act.
In addressing this issue, the Rogers Court first restated the controlling definitions of "wilful misconduct" and "wanton or reckless" misconduct from Sharkey and Bordonaro, as set forth above. It then observed as follows:
 One guilty of reckless misconduct does not intend to cause the harm which results from it. It is enough that he realizes or should realize that there is a strong probability that such harm may result. Amer. Law Institute Restatement, Torts (Negligence), § 500, Comment f. An intentional injury results from an CT Page 9438 act done for the purpose of causing the injury or with knowledge that the injury is substantially certain to follow. Amer Law Institute Restatement, Torts (Negligence), § 13, Comment d. "Wilful or intentional misconduct and wanton misconduct are different concepts of wrongful or improper misconduct" Bordonaro v. Senk, supra, p. 431. "To establish wilful injury there must be design, purpose, and intent to do wrong and inflict the injury; while to constitute wanton negligence, the party doing the act or failing to act must be conscious, from his knowledge of surrounding circumstances and existing conditions, that his conduct will naturally or probably result in injury." 20 R.C.L. p. 21.
Rogers, supra, 119 Conn. at 536. Then, invoking its above-quoted observation in Bordonaro that wilful misconduct and wanton misconduct are equivalent only "in result," the Court held that the plaintiff's prior judgment for reckless misconduct was not saved from discharge under the Bankruptcy Act's exception for "liabilities for . . . wilful or malicious injuries to the person or property of another."
When the legislature passed the initial version of Section 7-308 in 1955, it was no doubt aware of the well established meanings of the terms "wilful" and "wanton," as they had been stated in Connecticut case law for so many years. It is thus of great significance that, in drafting the statute, the legislature used both terms — sometimes together, sometimes alone — to accomplish their purposes. Municipalities were thus required, inter alia, to pay all sums which a fireman becomes obligated to pay by reason of liability imposed upon him by law for damages to person or property, if the fireman was performing fire duties and if the "occurrence, accident, injury or damages was not the result of any wilful or wanton act of such fireman" in the discharge of such duties. The use of both terms, "wilful" and "wanton," to describe the full range of conduct for which a fireman could not be indemnified under Section 7-308 clearly suggested that each term, as the legislature used and understood it, had a distinct and different meaning. Plainly, neither alone was sufficient in this context to accomplish its liability-limiting purpose.
This conclusion is reinforced by the legislature's exclusive use of the term "wilful and malicious" to describe the only type of conduct for which an injured fireman might lawfully sue a fellow municipal employee who has injured him on the job. By parallel construction, this usage strongly suggests that mere wanton or reckless conduct, which was mentioned elsewhere in the statute but not in this context, was not to CT Page 9439 serve as the basis for such a suit.
A final, persuasive reason why the term "wilful and malicious," as used in Section 7-308 to limit the conduct for which an injured fireman can sue a fellow employee for damages arising from a work-related injury, should be construed to mean conduct engaged in with the intent to cause injury, is that virtually identical language, used for that same purpose in General Statutes § 31-293a, a parallel statute, has consistently been so construed. Section 31-293a, which became law in 1967, provides in relevant part as follows:
 If an employee . . . has a right to benefits or compensation under this chapter on account of injury caused by the negligence or wrong of a fellow employee, such right shall be the exclusive remedy of such injured employee . . . and no action may be brought against such fellow employee unless such wrong was wilful or malicious or the action is based in the fellow employee's negligence in the operation of a motor vehicle as defined in section 14-1.
(Emphasis added.) So written, it, like Section 7-308, creates a general prohibition against fellow-employee lawsuits by injured employees who have a right to worker's compensation benefits for their injuries, but makes an exception for actions based on "wilful or malicious" conduct.
In Minchagos v. CBS, Inc., 196 Conn. 91, 102 (1985), and in several cases thereafter, our Supreme and Appellate Courts have narrowly construed this exception to apply only to intentional conduct engaged in with the intent to cause injury. On this score, the Minchagos Court, after invoking the test for "wilful and malicious injury" from Rogers v.Doody, expressly rejected as follows the plaintiff's claim that the exception should be read to permit suits based on common-law reckless or wanton misconduct:
 It is . . . well recognized that "[a]lthough the line between a highly foreseeable risk and an intentional tort often grows thin, it has always been deemed to exist: "On the other hand, the mere knowledge and appreciation of a risk, short of substantial certainty, is not the equivalent of intent. The defendant who acts in the belief or consciousness that he is causing an appreciable risk of harm to another may be negligent, and if the risk is great his conduct may be characterized as reckless or wanton, but it is not classed as an intentional wrong. In such CT Page 9440 cases the distinction between intent and negligence is obviously a matter of degree. Apparently the line has been drawn by the courts at the point where the known danger ceases to be only a foreseeable risk which a reasonable man would avoid, and becomes a substantial certainty." Keating v. Shell Chemical Co., [610 F.2d 328], 332 [(5th Cir. 1980)], quoting Prosser, [Torts (4th Ed. 1971), § 8], 32.
 Alleged misconduct deemed to be "reckless," as the plaintiff . . . claims, differs from intentional misconduct. "While an act to be reckless must be intended by the actor, the actor does not intend to cause the harm which results from it." 3 Restatement (Second), Torts § 500, Comment f (1965). "It is enough that he realizes or, from facts which he knows, should realize that there is a strong probability that harm may result, even though he hopes or even expects that his conduct will prove harmless. However, a strong probability is a different thing from a substantial certainty without which he cannot be said to intend the harm in which his act results." (Emphasis added.) Id.
On that basis, the Court upheld the trial court's granting of summary judgment because the plaintiff had failed to put into dispute the sworn statements of the defendants that they had not acted with the intent to cause her complained-of injuries. Minchagos, supra, 195 Conn. at 114.Accord, Nolan v. Borkowski, 206 Conn. 495, 500-01 (1988) (upholding the granting of summary judgment in an injured employee's action against fellow employees because the plaintiff's evidence in opposition to summary judgment was too speculative and conjectural to raise a genuine issue of material fact as to the defendants' alleged intent to cause her harm); Melanson v. West Hartford, 61 Conn. App. 683, 692 (2001) (upholding the granting of a motion to strike where the factual allegations in the plaintiff's complaint "would not, if proven, demonstrate the requisite intent or design to injure the plaintiff")
Against this background, the evidence is overwhelming that the term "wilful and malicious," as used in Section 7-308, means intentional conduct designed or intended to produce an injury. Therefore, although the plaintiff is plainly correct in his assertion that in Dubay v. Irish
and Elliott v. Waterbury, the Supreme Court effected a formal merger between the common-law concepts of wilful and wanton misconduct, defining them together with words once used only to define common-law wantonness or recklessness, that merger was surely not intended, and cannot CT Page 9441 reasonably be understood, to change the requirements of Section 7-308, a pre-existing statute.
In Dubay, the Court was called upon to decide if the record before it contained sufficient evidence of wilfulness, wantonness or recklessness to raise a genuine issue of material fact that the defendant engaged in "wilful, wanton and/or reckless conduct," as alleged in a single count of the plaintiff's complaint. Invoking the functional "equivalence" between common-law wilfulness and wantonness as a reason for articulating a single test for determining the presence of such evidence, the Court declared that "in practice," the terms wilful, wanton and reckless "have been treated as meaning the same thing;" id. at 533; which it then described as follows:
 "Tend to take on the aspect of highly unreasonable conduct, involving an extreme departure from ordinary care, in a situation where a high degree of danger is apparent. . . . It is at least clear . . . that such aggravated negligence must be more than mere mistake resulting from inexperience, excitement, or confusion, and more than mere thoughtlessness or inadvertence, or simply inattention. . . ." W. Prosser W. Keeton, Torts (5th Ed.) § 34, p. 214.
Id. Using this textbook definition, which omitted any mention of intent to cause injury, the Dubay Court concluded that the record before it did not "raise even a suspicion that the defendant's conduct was wilful, wanton or reckless." Id. at 534.
Standing alone, the Dubay case was unremarkable. By finding that the record before it contained insufficient evidence to prove "highly unreasonable conduct, involving an extreme departure from ordinary care, in a situation where a high degree of danger is apparent" — at most the equivalent of common-law recklessness, which had been alleged in the alternative — it necessarily found by implication that wilful misconduct had not been proved either. The case therefore cannot be read to change the definition of wilful misconduct.
Later, however, in Elliott v. Waterbury, the Court went further, expressly articulating a new test for what it referred to as "wanton, reckless, wilful, intentional and malicious conduct." In Elliott, the Court was called upon to review the trial court's entry of summary judgment on the plaintiff's "separate claims for wanton and reckless conduct, on the one hand, and wilful, intentional and malicious conduct, on the other." Id. at 415. Although these claims, unlike those discussed in Dubay, had been separately pleaded and decided by the trial court, the CT Page 9442 Supreme Court decided to "review them together, under the same standard;"id. for the following reasons:
 Notwithstanding our attempts in the past "to draw definitional distinctions"; Dubay v. Irish, 207 Conn. 518, 533, 542 A.2d 711 (1988) ; between these legal concepts, we have recently indicated that at least in the context of common-law tort actions, these concepts are indistinguishable. Id.
Elliott, supra, 245 Conn. at 415. (Emphasis added.) So stating, the Court articulated its new test as follows, combining the established test for common-law recklessness with language from Prosser and Keeton treatise it had quoted in Dubay:
 In order to establish that the defendants' conduct was wanton, reckless, wilful, intentional and malicious, the plaintiff must prove, on the part of the defendants, the existence of "a state of consciousness with reference to the consequences of one's acts. . . . [Such conduct] is more than negligence, more than gross negligence. . . . [I]n order to infer it, there must be something more than a failure to exercise a reasonable degree of watchfulness to avoid danger to others or to take reasonable precautions to avoid injury to them. . . . It is such conduct as indicates a reckless disregard of the just rights or safety of others or of the consequences of the action. . . . [In sum, such] conduct tends to take on the aspect of highly unreasonable conduct, involving an extreme departure from ordinary care, in a situation where a high degree of danger is apparent." (Citations omitted; internal quotation marks omitted.) Id., 532-33.
Elliott, supra, 245 Conn. at 415.
Two things are especially significant about the manner in which theElliott Court introduced its new test. First, as in Dubay, the Court applied its test to assess the sufficiency of a single set of facts to establish liability under two theories which, though subject to different definitions, had traditionally been pleaded as alternative ways of proving a single claim. Therefore, the new test merely described the essential elements of the less culpable form of conduct upon which that single claim could be based. Logically, if the evidence was insufficient to establish liability under that theory, it was also insufficient to CT Page 9443 establish liability under the other theory, whose proof requirements were more difficult to satisfy. Put directly, if the evidence of record was insufficient to establish recklessness, it was also insufficient to establish wilful misconduct.
Secondly, the Court's suggestion that a new test had recently been adopted was expressly limited in application to "common-law tort actions." Plainly, by stating this contextual limitation, the Court gave clear notice that its new test should not be used in other contexts, viz. to construe the language of pre-existing statutes.
With these observations in mind, this Court finds that the Dubay andElliott decisions have no effect upon the interpretation of Section 7-308. The term "wilful and malicious," as used in that statute, requires proof of intent to cause injury.
 III
Having decided that the plaintiff cannot prevail on either of his claims against defendant DiBianco without pleading and proving that DiBianco acted with the intent to cause injury, the Court must first examine the challenged counts of his Complaint to determine if such an intent to cause injury is provable thereunder. Manifestly, it is not.
Though Count XIV purports to state a claim for wilful and malicious conduct, each act by which the defendant is claimed to have engaged in such conduct constitutes nothing more recklessness, and in most cases simple negligence. Nowhere in the count is it alleged that the defendant intentionally acted or failed to act in any of the ways described. Nowhere, more importantly, does the plaintiff claim that the defendant engaged in any of the conduct of which he is accused with the intent to cause injury.
In Count XV of the Complaint, the plaintiff purports to state a claim for violation of General Statutes § 14-295. Whether or not he has stated all the elements of such a claim, it is clear that no such claim can overcome the bar of Section 7-308 unless it includes allegations that the defendant intentionally engaged in the conduct in question with the intent to cause injury. Unlike Count XIV, which contains no allegation of intentional conduct, Count XV alleges in part that the defendant "deliberately . . . operated a [Fire District ambulance] in violation of Sections 14-218 (a) and 14-227 of the Connecticut General Statutes and said violation was a substantial factor in causing the plaintiff's injuries and damages."
Though the foregoing allegation is sufficient to allege that the CT Page 9444 defendant intentionally engaged in some of the conduct of which he is accused — to wit, operating the ambulance in violation of General Statutes §§ 14-218a and 14-222 — it certainly does not accuse him of engaging in such conduct with the intent to cause injury.
Against this background, for the reasons stated in Part I of this Memorandum of Decision, the Court has an ample basis for granting the defendant's motion for summary judgment as to both challenged counts of the Complaint for failure to state claims upon which relief can be granted. Even so, as previously noted, it has been asked by the plaintiff, in the event it determines that the term "wilful and malicious," as used in Section 7-308, describes only conduct engaged in with the intent to cause injury, to treat the defendant's challenge to the sufficiency of his Complaint as a motion to strike, thereby permitting him to replead that defendant DiBianco acted with that intent.
In support of this request, the plaintiff has avowed, through his attorney, that he is fully prepared to allege facts which, if proven, will establish that when defendant DiBianco drove the Fire District ambulance through the intersection of Church Street South and South Frontage Road on October 5, 1999, he did so with the intent to cause injury. In light of the confusion the plaintiff might reasonably have had, upon reading the Supreme Court's opinions in Dubay and Elliott, as to the definition of the term "wilful and malicious," as used in Section7-308, the Court concludes that it should honor that request by affording the plaintiff a brief opportunity to amend his pleading before finalizing its ruling on the defendant's summary judgment motion.
Accordingly, if the plaintiff has a good-faith basis for alleging that his co-worker, defendant DiBianco, proximately caused his injuries while acting with the intent to cause injury, he shall amend his Complaint to state such a claim not later than Monday, July 29, 2002. His failure to do so will result in the entry of summary judgment for the defendant on Counts XIV and XV of the Complaint.
 IV
In light of this Court's decision to permit the plaintiff to replead his claims of wilful and malicious conduct and violation of General Statutes § 14-295, any discussion of the defendant's parallel claims of evidentiary insufficiency is obviously premature. This is so for two reasons. First, of course, the plaintiff has not yet pleaded, or thus committed himself to proving, all the essential elements of wilful and malicious conduct. Thus, there is no pending claim whose evidentiary sufficiency can be assessed. CT Page 9445
Secondly, having thus far directed his proof and discovery efforts to developing a claim based on allegations of common-law recklessness, as suggested by Dubay and Elliott, the plaintiff has not yet had the opportunity to depose the single most important witness on the essential missing element of intent: the defendant himself. It is therefore essential that before such an argument is joined, the stay of discovery must be lifted to permit the deposition of defendant DiBianco.
Third and finally, the Court must note that however unlikely it may be that defendant DiBianco subjectively intended to cause injury to the plaintiff, a fellow firefighter who was riding along with him in the ambulance when the subject collision occurred, the defendant has not yet averred that he did not intend to cause such injury. Such an averment, though not dispositive on the issue of intent, has been found in other cases to shift the burden to the party opposing the summary judgment to adduce evidence of intent. See, e.g. Mingachos v. CBS, Inc., supra,196 Conn. at 114. (Upholding the granting of summary judgment on the issue of intent to injure where each defendant gave an affidavit disavowing that he acted with such an intent but the plaintiff did nothing to put those statements in dispute.) Accord, Nolan v. Borkowski, supra,206 Conn. at 499-507
(holding that summary judgment was properly granted on a claim of wilful and malicious conduct because the plaintiff to raise a genuine issue of material fact as to the defendants' denials that they acted with the intent to cause injury). These cases stand as a warning to any plaintiff opposing a motion for summary judgment that he must be prepared to present competent evidence of intent to overcome the defendant's sworn denial of lack of intent. By the same token, they serve as a useful reminder to the defendant that he, as the moving party on a summary-judgment motion, must make the initial showing that he did not intentionally cause the plaintiff's injuries. Absent such an initial showing, by affidavit of otherwise, the plaintiff, as the nonmoving party, will have no burden of any kind in opposing the motion.
Mindful of this procedural posture, the defendant has asked the Court to allow him to refile his summary-judgment motion, supported by a new, more complete affidavit from his client, if the plaintiff repleads a valid claim of wilful and malicious conduct. The Court agrees that if the plaintiff repleads as he has requested, the defendant should be granted two weeks from the conclusion of his client's deposition to refile his motion and supporting materials with the Court. Thereafter, the plaintiff shall have two weeks to file his opposing memorandum and materials, and the Court will hold oral argument on the refiled motion as soon as its schedule reasonably permits.
 CONCLUSION
CT Page 9446
For the foregoing reasons, the court hereby ORDERS as follows: (1) that the defendant's motion for summary judgment shall be GRANTED, unless, by July 29, 2002, the plaintiff refiles an amended complaint in which he alleges that, in causing his injuries, defendant Donald DiBianco acted with the intent to cause such injuries; (2) that, if the plaintiff files an amended complaint in the time and the manner permitted by this order, defendant DiBianco shall make himself available for a full deposition by the plaintiff not later than August 9, 2002, unless a later date is agreed to by counsel or set by the Court; (3) that not later than two weeks after the deposition of defendant DiBianco, the defendant may refile his motion for summary judgment on the ground of lack of intent to cause injury; (4) if the defendant refiles his motion for summary judgment, the plaintiff shall file his opposition thereto not later than two weeks thereafter; and (5) upon the submission of the plaintiff's opposition to the motion, the Court will set it down for argument forthwith.
IT IS SO ORDERED this 22nd day of July, 2002.
MICHAEL R. SHELDON, J.